Judge Owsley
delivered the Opinion of the Court.
On the 11th of May, 1780, Clough and Waller Overton made an entry for six hundred acres of land, on a treasury warrant &c. and on the second of September, in the same year, two adjoining surveys of three hundred acres each, was made upon the entry in their joint names. Afterwards, on the first of September, one thousand seven hundred and eighty-two, an inclusive patent for the land contained in both surveys, issued from the Commonwealth of Virginia to Clough and Waller Overton jointly. A few days, however, before the dató *14 of the patent, Clough Overton was lulled by the Indians, at the battle of the Blue Licks, having previously, on the 18th of July, 1782, made and published his last will in writing. This will was after-wards duly proved arid admitted to record. By his will Clough Overton devised his interest, in the sir hundred acres of land aforesaid, to his sisters Elizabeth, Mary and Sarah Overton, the former of whom afterwards married Batt C. Lacy, and the latter after marrying William C. Lacy, departed this life, leaving an only child, John Overton Lacy, Subsequent to this, hut many years ago, Batt C. Lacy, in right of his wife Elizabeth and Win. C. Lacy, as the natural guardian for his son John Overton Lacy, entered upon or.e of the surveys which was made under the entry for six hundred acres, claiming the 'same under the devise of Clough Overton- to his sisters, and they have remained in the possession thereof ever since.
Waller Over-ton recovers-judgment in ejectment.
Bill by the devisees of Clough Over-ton for injunction against the judgment and sui render of the title.
Conceiving, however, that under the patent which-issued in the name of him and his deceased brother, Clough Overton, jointly, that he was entitled to the whole six hundred acres of land, Waller Overton-commenced an ejectment against the Lacys for the-' land of which they were possessed, and finally succeeded in recovering judgment,
Batt C. Lacy and his wife Elizabeth, John Over-ton Lacy, by William Lacy his next friend, and Mary Overton then exhibited their bill in equity with injunction against Waller Overton. Among other things contained in their bil-1, they set out an agreement which they allege to lxave been made between the testator Clough Overton and Waller Overton, after the date of the entry and before it was surveyed, to divide the land between them, each to have-three hundred acres by meets and bounds; and they charge, that in pursuance to that agreement the two surveys were made, and that the one now in their possession was to belong to C-lougb Overton and the other to Waller. They, therefore, contend that although the agreement was never in the lifetime of Clough Overton entirely fulfilled by the parties executing to each other written transfers for the land *15 to ‘which they were respectively entitled, yet by the agreement each became equitably entitled to a several interest; and they insist that in a court of equity that agreement should be specifically executed, and Waller Overton perpetually enjoined from disturbing their possession, and decreed to surrender to them any title which he may be supposed to have to the survey upon which they reside &c.
Decree of the circuit court.
Grant of the commonwealth to two as tenants in common, issued after the death of ono, passes but a moiety to the living grantee. But— Where the grant is mado to two as joint tenants, one of whom was dead before the patent issued, the living grantee takes the whole estate in severalty.
Waller Overton admits the recovery of a judgment in the ejectment by him, insists that the legal title to the whole six hundred acres is in him, and contends that no such agreement was ever made between him and Clough Overton for a division of the land, as should be specifically decreed by a court of equity &c.
On hearing the circuit court made the injunction perpetual against the judgment at law, and decreed Waller Overton to surrender his title to the land in contest to the complainants.
To reverse that decree this writ of error has been prosecuted by Waller Overton.
The position assumed by the plaintiff in error, that by the emanation of the patent the entire legal right of entry vested in him, will not be contested by us. Clough Overton having died before the date of the patent, lie, of course, could then take no estate, and though named as one of two joint patentees, the title to the land, nor any part thereof, cannot, according to any principle of construction, have passed, by the patent from the commonwealth to him. The same objection does not, however, apply to Waller Overton, the other paten-tee. He was living and under no incapacity to take the title at the date of the patent and must have acquired a title of some sort, by the patent which purports to have issued to him and Clough Overton jointly. The only question is as to the description of title that passed to him. The other person named as a joint patentee with him being dead, did lie take the entire title in severalty to the whole six hundred acres described in the patent, or did he take a title to but an undivided moiety of the land, and the *16 title to tbe other still continue in the commonwealth. During the present term we had occasion to decide upon the effect of a patent which purported to grant land to two as tenants in common, one of whom was dead when it issued from the commonwealth, and it was then held that the survivor took title to an undivided moiety only, the title to the other moiety notwithstanding the grant continuing to reside in the commonwealth. (5 Mon. 443.) That decision we still approve. Tenants in common do not hold a joint title; their titles to land are in their nature several, and are so treated throughout all judicial proceedings. It was, therefore, no doubt correct to decide that a patent which is intended to grant an estate in common to two, does not on account of one being dead at the time it issues, pass the entire title to the whole of the land to the survivor. A contrary decision would be giving an operation to the grant that never was intended by the grantor, and confer upon the survivor a title, to which, by the clear import of the grant, he was not to be invested. But not so as respects patents which purport to grant land to two or more jointly. The title of joint tenants is not like that of tenants in common; it is not several but joint. They hold a unity of title, are said to be seized per my etper tout, and as the law stood at the date of the patent in question, upon the death of either tenant the title would go to the survivor. It is not, therefore, as in the case of tenants in common, necessary, to effectuate the intention of the grantor, to limit the operation of a grant to two as joint tenants, one of whom being dead at the date of the grant, to a moiety of the land only. The intention of the grantor and the object of the grant will be better attained by admitting the title of the whole to pass to the living grantee. The title must be so admitted to pass, unless we suppose what is altogether inadmissible, that by the very act of granting a joint title to two, one of whom is dead, a sort of legal severance of the title intended to be granted is produced, and we thereby, instead of making the grantee in being take a title which, as survivor, he would have held to the whole of the land, if the other grantee *17 had been living at the date of the grant and after-wards departed this life, we split the title and make him, contrary to the plain import of the grant, take an estate in a moiety only, and hold the title to that moiety as tenant in common with the commonwealth.
In .such case before the act abolish-inS the jus the survivor was entitled to the whole thtfrenre-1”^ resentatives of the de-botlUawand equitv. " •
^N1'66' mT'and di-" vision accor-dingiy of tween joint tenants, before the grant *ya“efu’b^icl1 quentlymade to both, but after tl?p death of one of the grantees, was a severance, and the devi-see of the deceased may enforce the surrendor 'of the title by bill.
*17 We shall, therefore, assume as correct, the position contended for by Waller Overton, that the le-legal title to the whole six hundred acres is in him, and proceed to enquire whether or not the court below was correct in deciding that he should surrender the title to the three hundred acres in contest to the complainants in that court.
If there had been no agreement between Clough and Waller Overton to divide and make partition of the land, we should have no hesitation in saying that Waller Overton ought not to be compelled to surrender the title which lie derived by the grant from the commonwealth to any part of the land, Having obtained the title as he did, at a time when the right of survivorship was an incident to estates held in joint tenancy, he must occupy as favorable ground as he would have done, had the grant issued in the lifetime of both him and Clough Overton, and the title which he now holds had afterwards come to him as the survivor, and although the jus accrescendi has never been the favorite of courts of equity, no case is recollected where those courts have assumed the power to dispense with the law and without any agreement between the joint tenants in their lifetime to sever the estate, to compel the survivor to surrender any part of the title to the representatives of the deceased tenant.
But it is in proof in this case, that before the death of Clough Overton, an agreement was made between him and Waller Overton, to divide the six hundred acres between them, and that in pursuance to the agreement so made, two surveys of three hundred acres each, was not only actually executed, but moreover by mutual consent of the parties, the survey now in contest was assigned to Clough Over-ton, and the other survey was to belong to Waller Overton. The agreement so made, was not, it is true, reduced to writing by the parties, and did not *18 therefore in'legal strictness produce a severance of the joint estate; but though by parol, yet as it was entered into before the "statute against frauds ancl perjuries, had any operation in the then state of Virginia, the agreement, must, we apprehend, in the contemplation of a court of equity have produced a severance, and no reason is perceived why the a-greemeht should not now be carried into specific éxecution by the decree of the court.
Parol agreements for land, made Before the statute against frauds and perjuries, are not effected by the act, and may be enforced in equity.
Wickliffe and Barry, for plaintiff; Crittenden and Hardin, for defendants.
An‘agreement of the sort cannot be said to be without consideration, and it has been repeatedly decided that parol contracts made before the passage of the act against frauds &c. may, notwithstanding the after passage of the act, be enforced by the decree of a court of equity.
Understanding the agreement to have thus produced an equitable severance of the interest held by Clough and Waller Overton in the land, the right of the complainants in the court below to the decree which was pronounced by that court in them favor, is plain and obvious. Being entitled in equity to a several interest and estate in the survey in question, it was competent for Clough Overton to devise that interest to others, and the proof in the cause is satisfactory to shew that he actually devised the same to two of. the complainants and the deceased mother of the other.
The decree must, therefore, be affirmed, with cost.